David BORR, Plaintiff and Appellant,

v.

McKENZIE COUNTY PUBLIC SCHOOL
DISTRICT NO. 1, Defendant and
Appellee.

Civil. No. 950170.

Supreme Court of North Dakota.

Dec. 29, 1995.

Michael Geiermann (argued), Rolfson Schulz Lervick Law Offices, Bismarck, for plaintiff and appellant.

David E. Reich (argued), Pearce & Durick, Bismarck, for defendant and appellee.

North Dakota Council of School Administrators, amicus curiae on brief.

NEUMANN, Justice.

David Borr appeals from summary judgment dismissing his claim against the McKenzie County Public School District for wrongful nonrenewal of his teaching contract. We reverse and remand.

Borr alleges the McKenzie County Public School District (District) wrongfully nonrenewed his teaching contract because the school board abused its discretion (1) in finding the District's administration had substantiated the nonrenewal reason of declining enrollment as required under the nonrenewal statute, and (2) in permitting the District's principal to present evidence supporting the administration's nonrenewal recommendation under its reduction-in-force policy in violation of the secret personnel file statute. After reviewing motions for summary judgment from both parties, the trial court granted the

District's motion, dismissing Borr's claim. Because the trial court did not rule on all the issues necessary to determine Borr's claim, the school District was not entitled to summary judgment as a matter of law. Rule 56(c), N.D.R.Civ.P.; *Hastings Pork v. Johanneson*, 335 N.W.2d 802, 805 (N.D.1983) (explaining standard of review for appeal from summary judgment). We reverse and remand for further proceedings consistent with this opinion.

For nine years until the spring of 1994, the District had employed Borr as a music teacher. Borr was the senior member of a three-teacher music department. Because of declining enrollment, the District's school board directed the administration to cut four staff positions. The administration determined the music department was overstaffed.

After reviewing the District's reduction-in-force (RIF) policy, the administration recommended Borr for contemplated nonrenewal of his teaching contract for the 1994–95 school year. The recommendation was based on Borr's teaching ineffectiveness. The school board notified Borr of its contemplated nonrenewal by letter dated April 12, 1994. The reason for the contemplated nonrenewal was declining enrollment.

A nonrenewal hearing was held on April 20, 1994. To support nonrenewal of Borr's teaching contract, the District's Superintendent, Sherman Sylling, presented evidence to the school board about the District's declining enrollment. The evidence consisted primarily of an enrollment data form that disclosed enrollment figures beginning with the 1982–83 school year and projecting them through the 1997–98 school year. The figures revealed the District had experienced a steady decline in enrollment for the past ten years, and although an insignificant increase was expected in the next two immediate school years, 1994–95 and 1995–96, the past decline was projected to continue.

Sylling also explained why, under the District's RIF policy, Borr was chosen for nonrenewal. He indicated teaching effectiveness is the first criterion considered in selecting a teacher for nonrenewal, and it was not a favorable consideration for Borr.

The District's High School Principal, Jay Diede, testified why Borr's teaching effectiveness was not favorable. Diede had received some parental complaints in the fall of 1993 about an incident involving Borr and his band students in which Borr made an "inappropriate" comment to the students about one of their band performances. Diede made notes regarding these complaints in his daily planner, an appointment calendar that includes space for listing priority tasks and recording daily events. Diede did not place the complaints in Borr's personnel file, but did verbally inform Borr of them. Diede also testified about a couple of occasions in which he observed Borr's classroom and later discussed with Borr what he believed to be a lack of discipline. Finally, although he did not relate it specifically to Borr's teaching effectiveness, Diede indicated fifty percent of Borr's band students were going to drop band for the upcoming school year.

After the continued hearing held on April 25, 1994, the District's school board voted to nonrenew Borr's teaching contract.

■ We note initially this court's standard for reviewing the nonrenewal decisions of a school board. We are limited to:

"... (1) determining whether or not the reasons given are in accordance with the statutory provisions, i.e., they are not frivolous or arbitrary but, rather, are related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in teaching staff; and (2) determining—if those reasons are legally sufficient—whether or not under the facts of the case the school board has abused its discretion in reaching the non-renewal decision."

*Dobervich v. Central Cass Pub. Sch. District*, 302 N.W.2d 745, 751–52 (N.D.1981).

■ The District's reason for not renewing Borr's teaching contract was declining enrollment in the McKenzie County Public School District. The parties do not dispute that declining enrollment is a proper reason for nonrenewal. Instead Borr challenges the legal sufficiency of that reason, the second determination required under *Dobervich*.

Borr contends the school board abused its discretion in finding the District's administration had substantiated the reason for nonrenewal of his teaching contract as required under the nonrenewal statute, N.D.C.C. § 15–47–38(5). He argues the District's enrollment was not declining, because projections revealed enrollment was going to increase for the next two immediate school years. To support this argument, he asserts the administration must substantiate a nonrenewal reason of declining enrollment with present and future, not past, enrollment figures. The trial court determined declining enrollment as a reason for nonrenewal had been substantiated.

The trial court characterized Borr's second issue as one disputing "the way in which [Borr] was selected for nonrenewal as opposed to another teacher." The court concluded that even though the administration gave a reason for the nonrenewal recommendation under the District's RIF policy— Borr's teaching ineffectiveness—and the school board approved this recommendation, under *Reed v. Edgeley Pub. Sch. District No. 3*, 313 N.W.2d 775 (N.D.1981), the board was not required to give a reason for selecting one teacher over another. The trial court's reliance on *Reed* is misplaced given this court's decision in *Law v. Mandan Pub. Sch. District*, 411 N.W.2d 375 (N.D.1987).

Both *Reed* and *Law* addressed arguments about compliance with the nonrenewal statute, but unlike *Law, Reed*'s facts did not include a school district's RIF policy. *Reed*, 313 N.W.2d at 776–80; *Law*, 411 N.W.2d at 376–82. *Law* addressed the compatibility of a RIF policy with the nonrenewal statute and determined the nonrenewal statute provides minimum protections for teachers while a RIF policy that is part of a school district's contract with its teachers increases those protections. *Id.* at 378. Specifically, a RIF policy "imposes an additional contractual obligation upon [a] school district in reaching its decision to not renew a particular teacher." *Id.* As in *Law*, the school district in the present case agreed its RIF policy is part of the contract between the District and its teachers. Thus, according to *Law*, the trial court needed to determine as a matter of law

whether the District had met its contractual obligation under its RIF policy. Because the court failed to make this determination, the District was not entitled to summary judgment.

■ On remand, to determine whether the District complied with its RIF policy, the court also must consider Borr's second issue, whether the school board abused its discretion in permitting the District's principal to present evidence at the nonrenewal hearing that may have violated the secret personnel file statute. Borr alleges Principal Diede maintained a secret personnel file by making notes about parental complaints in his daily planner. In arguing Diede's planner was a secret personnel file, Borr is not suggesting the planner *per se* is a secret personnel file. Rather, he confines his argument to disputing the manner in which the planner was used by Principal Diede. Borr contends it was an abuse of discretion by the school board to permit Principal Diede to testify at the nonrenewal hearing about the notes he made in his planner. "[A] school board abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner." *Dobervich*, 302 N.W.2d at 752.

■ Chapter 15–38.2 of the North Dakota Century Code governs teachers' personnel files. The legislature enacted the chapter in 1977 to provide teachers with important statutory protections concerning their personnel files. 1977 N.D. Laws ch. 167; Senate Educ. Comm. Minutes, S.B. 2359 (Jan. 31, 1977, and Mar. 7, 1977). The legislation was motivated by an aversion for secret files, specifically files concerning personnel matters. Senate Educ. Comm. Minutes. Recounted in the legislative history is the experience of a teacher contemplated for nonrenewal who, at the nonrenewal hearing, was confronted with a four-page summary of disciplinary problems kept by the principal in a daily log but not in the teacher's personnel file. *Id.* According to committee testimony, the teacher's experience depicted a common problem encountered in teacher evaluations—"not what was in [a teacher's] personnel file, but rather what was *not* in the personnel file." *Id.*

The secret personnel file statute prohibits "any person in any public school district" from maintaining a secret personnel file about any teacher to which that teacher does not have access. N.D.C.C. § 15–38.2–06. "Secret personnel file" is not defined in section 15–38.2–06 or in chapter 15–38.2, but the phrase may be examined in the context of section 15–38.2–06 and the other sections in chapter 15–38.2. *E.g., Christianson v. City of Bismarck,* 476 N.W.2d 688, 690 (N.D.1991) (interpreting statutes "in the context of the chapter in which it is placed").

The other sections in chapter 15–38.2 grant teachers specific rights. Teachers have the right to review the contents of their personnel files and to make notes in their files about the contents. N.D.C.C. §§ 15–38.2–01, –02. They also have the right to object to material placed in their file and to be informed promptly of complaints against them. *Id.* §§ 15–38.2–03, –04. Keeping a secret personnel file would deny teachers these specific rights.

The trial court determined the District's administration had substantiated its nonrenewal reason of declining enrollment, but the court also needed to determine whether the District met it contractual obligation under its RIF policy. In determining if the District met this obligation, the court needs to consider Borr's second issue claiming an abuse of discretion by the school board in permitting evidence at Borr's nonrenewal hearing that may have violated the secret personnel file statute.

For the foregoing reasons, summary judgment in favor of the District was not appropriate. We reverse and remand for proceedings consistent with this opinion.

VANDE WALLE, C.J., and MESCHKE, LEVINE and SANDSTROM, JJ., concur.