**CBA CREDIT SERVICES OF NORTH DAKOTA, d/b/a Credit Bureau of Fargo–Moorhead, Plaintiff and Appellee,**

v.

**James J. AZAR, Defendant and Appellant.**

**Civil No. 960044.**

Supreme Court of North Dakota.

July 18, 1996.

Chad C. Nodland, of Nodland Law Offices, Bismarck, for defendant and appellant.

Steven A. Johnson, of Vogel, Kelly, Knutson, Weir, Bye & Hunke, Fargo, for plaintiff and appellee.

NEUMANN, Justice.

James J. Azar appeals a summary judgment granting CBA Credit Service (CBA) recovery of $4,230 from Azar for two $2,000 insufficient funds checks plus civil penalties. We reverse and direct entry of judgment for Azar, dismissing CBA's claim.

On October 6, 1992, Azar, a resident of Bismarck, North Dakota, traveled to the Shooting Star Casino in Mahnomen, Minnesota. The Casino is located on the reservation land of the White Earth Band of Chippewa Indians. The White Earth Band owns and operates the Casino.

According to Azar's affidavit, while he was at the Casino, he gambled and lost approxi-mately $14,000 playing blackjack. Casino personnel approached Azar after he incurred the losses and twice offered him, on credit, $2,000 in blackjack chips. CBA offered no affidavit to contradict Azar's account of these events. After Azar gambled and lost each $2,000 advance of blackjack chips, Casino personnel requested Azar sign a credit document and issue a check to the Casino for payment of the advanced chips. Both checks were returned insufficient funds. On October 15, 1994, the Casino assigned its interest in the checks to CBA.

By complaint dated February 10, 1995, CBA sued Azar for $4,230, the amount of the two checks plus civil penalties. Both parties moved for summary judgment. The trial court granted CBA's motion and implicitly denied Azar's motion. Azar appeals.

Azar argues, under Minnesota Statutes section 541.21, the gambling debt is illegal, and therefore unenforceable, even though the statute excepts, as lawful, gaming activities conducted under the Indian Gaming Regulatory Act.[1] He contends the Casino's advance of blackjack chips was an extension of credit in violation of the Tribal–State Compact governing the Casino's gaming activities. He further contends, because the gaming activity was not legal under the Compact, it was not legal under the Indian Gaming Regulatory Act. Therefore, the lawful gaming exception does not apply, and the debt is unenforceable. CBA argues the debt is enforceable because, as permitted under the Compact, the Casino provided check cashing services to Azar. Therefore, the gaming activity was legal, the lawful gaming exception applies, and the debt is enforceable. CBA alternatively argues, even if the Casino impermissibly advanced Azar blackjack chips, Azar has no remedy for the violation of the Compact because the Compact is a contract between the White Earth Band and the State of Minnesota, and Azar is not a party to that contract. We agree with Azar's argument.

This is a collection action to enforce a gambling debt represented by two insuffi-

---

1. Azar also argued this court should abstain from exercising jurisdiction under principles of comity because CBA had not exhausted available tribal court remedies. But during oral argument, Azar waived the argument. Therefore, we do not address it.

cient funds checks issued by Azar to the Casino. There are no genuine issues of material fact. *Kummer v. City of Fargo,* 516 N.W.2d 294, 297 (N.D.1994) (stating parties resisting motions for summary judgment "may not simply rely upon the pleadings or upon unsupported, conclusory allegations"). But we must determine whether the trial court correctly applied the law. *Borr v. McKenzie Pub. Sch. Dist. No. 1,* 541 N.W.2d 681, 682 (N.D.1995) (noting standard for reviewing appeal of summary judgment). The parties do not dispute that Minnesota law applies. *E.g. Apollo Sprinkler Co., Inc. v. Fire Sprinkler Suppliers & Design, Inc.,* 382 N.W.2d 386, 389 (N.D.1986).

Under Minnesota Statutes section 541.21, gambling debts are, in general, void and of no effect as between the parties to the debt. Minn.Stat.Ann. § 541.21 (West Supp.1996). For example, in *State v. Stevens,* 459 N.W.2d 513 (Minn.App.1990), section 541.21 barred the criminal prosecution of a defendant who had paid for gambling purchases with a check that was later returned for insufficient funds. *Id.* at 514–15. But the statute provides four exceptions for legalized gambling, one of which is "gaming activities conducted pursuant to the Indian Gaming Regulatory Act [IGRA]." Minn.Stat.Ann. § 541.21(3) (West Supp.1996).[2]

■ IGRA sets forth a comprehensive statutory framework for the operation and regulation of gaming by Indian tribes. 25 U.S.C.A. §§ 2701–21 (West Supp.1996). IGRA creates three classes of gaming which differ in definition and in the amount of federal, state, and tribal oversight. *United States v. Sisseton–Wahpeton Sioux Tribe,* 897 F.2d 358, 359 (8th Cir.1990); 25 U.S.C.A. § 2703(6), (7), (8) (defining classes); *Id.* § 2710 (providing regulations governing classes). Blackjack falls within the definition of class III gaming. *Sisseton,* 897 F.2d at 360.

■ Under IGRA, class III gaming is lawful on Indian lands only if it is: (1) authorized by a tribal gaming ordinance, (2) located in a state that permits such gaming, and (3) "conducted in conformance with a Tribal–State compact entered into by the Indian tribe and the State...." *Seminole Tribe of Florida v. Florida et al.,* —— U.S. ——, ——, 116 S.Ct. 1114, 1120, 134 L.Ed.2d 252 (1996). We assume, for purposes of our analysis, compliance with the first two requirements. Regarding the third requirement, the White Earth Band and the State of Minnesota have entered into a Tribal–State Compact governing the gaming activities within the White Earth Band's reservation. Tribal–State Compact For Control Of Class III Blackjack On The White Earth Band Of Chippewa Reservation In Minnesota, *opened for signature,* May 8, 1991 ("Minnesota/Chippewa Compact"); *cf. Seminole Tribe,* —— U.S. at ——, ——, 116 S.Ct. at 1119, 1121 (involving class III gaming and refusal by state to enter into Compact). The Compact governs the licensing, regulation, and play of blackjack within the White Earth Band's reservation. Minnesota/Chippewa Compact, § 1.02. The Shooting Star Casino is located on the reservation; the play of blackjack at the Casino is governed by the Compact.

■ Section 4 of the Compact addresses the regulatory standards for blackjack, and includes a subsection titled, "No Credit Extended." *Id.* § 4.2. This subsection states:

**2.** Section 541.21 provides:

"Every note, bill, bond, mortgage, or other security or conveyance in which the whole or any part of the consideration shall be for any money or goods won by gambling or playing at cards, dice, or any other game whatever, or by betting on the sides or hands of any person gambling, or for reimbursing or repaying any money knowingly lent or advanced at the time and place of such gambling or betting, or lent and advanced for any gambling or betting to any persons so gambling or betting, shall be void and of no effect as between the parties to the same, and as to all persons except such as hold or claim under them in good, faith, without notice of the illegality of the consideration of such contract or conveyance. The provisions of this section shall not apply to: (1) pari-mutuel wagering conducted under a license issued pursuant to chapter 240; (2) purchase of tickets in the state lottery under chapter 349A; (3) gaming activities conducted pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. 2701 et seq.; or (4) lawful gambling activities permitted under chapter 349."

Minn.Stat.Ann. § 541.21 (West Supp.1996).

"All gaming shall be conducted on a cash basis. Except as herein provided, no person shall be extended credit for gaming by any gaming facility operated within the Band, and no operator shall permit any person or organization to offer such credit for a fee. This section shall not restrict the right of the Band or any other person to offer check cashing or to install or accept bank card or credit card transactions in the same manner as would be normally permitted at any retail business within the State."

*Id.* CBA claims the Casino was providing check cashing services to Azar. However, the uncontroverted evidence indicates Casino personnel approached Azar after he incurred large gambling losses and twice offered him, on credit, $2,000 in blackjack chips. The uncontroverted evidence further indicates that only after Azar had gambled and lost each $2,000 advance of blackjack chips, Casino personnel requested Azar sign a credit document and issue a check to the Casino for payment of the advanced chips. Advancing blackjack chips is not conducting gaming on a cash basis. It is extending credit, an action forbidden by the Compact. *See, e.g., Crow Tribe of Indians v. Racicot,* 87 F.3d 1039 (9th Cir.1996) (interpreting a Tribal–State Compact and concluding it did not permit the use of mechanical slot machines). Thus, the gaming activity in which Azar incurred his gambling debt, the play of blackjack, was not conducted lawfully under the Compact, and therefore, was not conducted lawfully under IGRA. The lawful gaming activities exception under section 541.21 is not applicable, and the Casino cannot enforce Azar's gambling debt.

 While section 541.21 renders the gambling debt void as between Azar and the Casino, the statute apparently excepts persons who are "holder[s] in due course [with] no notice of the illegality of the obligation." *Stevens,* 459 N.W.2d at 514–15; *compare id. with* Minn.Stat.Ann. § 541.21 (excepting persons who "hold or claim under [gambling commitments] in good faith, without notice of the illegality of the consideration of such contract or conveyance."). CBA is not a holder in due course. Minn.Stat.Ann. § 336.3–302 (West Supp.1996) (defining "holder in due course"). In accepting the assignment of the Casino's interest in Azar's two insufficient funds checks, CBA knew the checks had been dishonored by Azar's bank. *Id.* § 336.3–302(2)(iii). As a mere assignee, CBA receives no more right of enforcement in the checks than that held by its assignor, the Casino. Minn.Stat.Ann. § 336.3–203 (West Supp.1996) (explaining transfer of instrument); 11 Am.Jur.2d § 312 (explaining transfer by assignment); *see Pioneer State Bank v. Johnsrud,* 284 N.W.2d 292, 296 (N.D.1979). The Casino cannot enforce Azar's gambling debt; therefore, neither can CBA.

Because CBA's collection action against Azar sought to enforce an unenforceable gambling debt, summary judgment in favor of CBA was not appropriate. We reverse and direct entry of judgment for Azar dismissing CBA's claim.

VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.