1997 ND 30

David BORR, Plaintiff and Appellant,

v.

McKENZIE COUNTY PUBLIC SCHOOL DISTRICT NO. 1, Defendant and Appellee.

Civil No. 960157.

Supreme Court of North Dakota.

Feb. 27, 1997.

Rolfson, Schulz, Lervick & Geiermann Law Offices, Bismarck, for plaintiff and appellant; argued by Michael Geiermann.

Pearce & Durick, Bismarck, for defendant and appellee; argued by David E. Reich.

MESCHKE, Justice.

[¶ 1] David Borr again appeals from a judgment dismissing his claim against the McKenzie County Public School District No. 1 for wrongful nonrenewal of his continuing teaching contract. We agree with the trial court that the school board met its legal and contractual obligations to Borr, and we affirm.

[¶ 2] Borr had been a music teacher for McKenzie County schools for nine years. In the fall of 1993, Borr harshly scolded his junior high marching band during an outdoor practice. Jay Diede, the principal, heard about it November 19 from a parent who complained Borr had once told the band they "suck" and also recently told the band "they were the worst group he had ever had." Diede visited Borr's classroom November 23, and the next day met with Borr to discuss his classroom observations and the band incident. Borr insisted he used the word "stunk" instead, and already had given an apology letter to the band members. Diede told Borr either word was inappropriate and indicated Borr must be accountable to parents.

[¶ 3] On March 2, 1994, Diede again observed Borr's classroom, and saw a class "management problem." Diede discussed this with Borr at his annual evaluation on March 11, suggesting Borr's problem stemmed from the band incident. Diede put Borr's annual evaluation in Borr's personnel file on March 11, but did not mention the band incident in it.

[¶ 4] The band incident surfaced again on March 15 when another parent complained to Diede, and two school board members brought him similar complaints from parents. Diede received another parental complaint about Borr on March 18, and he met with Borr that day to discuss the continuing complaints. Diede recommended Borr use upcoming parent-teacher conferences to address parental concerns. Diede also asked Borr to prepare, by the end of the month, an action plan for improvement.

[¶ 5] On March 30, the school board decided that a reduction in the teaching staff had become necessary from declining enrollment.

The board asked the school administration to recommend four teachers for nonrenewal. For one, the administration concluded the music department was overstaffed.

[¶ 6] On April 4, Diede received Borr's action plan explaining how he was addressing his problems with pupils and their parents. On April 11, Diede put documents about the band incident, including a summary of the complaints (without naming complaining parents) and Borr's action plan, into Borr's personnel file.

[¶ 7] At an evening board meeting on April 11, Sherman Sylling, the District Superintendent, recommended Borr's nonrenewal along with nonrenewal of three other teachers in the system. The next day, Diede met with Borr to discuss his plan, and to tell him a summary of the band incident had been placed in his personnel file. Diede then delivered an April 12 letter from the school board to notify Borr of his contemplated nonrenewal and hearing scheduled for April 20.

[¶ 8] At the hearing, Superintendent Sylling presented to the school board information showing the District's enrollment had declined from 1,063 pupils in 1982–83 to 765 pupils in 1993–94. Sylling explained Borr had been chosen for nonrenewal for teacher ineffectiveness, the first criterion to be considered in selecting for nonrenewal under the District's policy on reduction in force (RIF policy).

[¶ 9] Diede explained to the board why he considered Borr ineffective. He reported the parental complaints about the band incident. Diede acknowledged he did not place the parental complaints into Borr's personnel file right away. Rather, he had noted them only in his Franklin desk planner, an appointment book with space for listing tasks and recording daily events, and had refreshed his memory from the desk planner for this hearing. Diede asserted he had promptly discussed the complaints with Borr, and had told Borr his use of either "suck" or "stunk" was inappropriate. Diede also described the lack of discipline observed in Borr's classroom during Diede's last visit there. Diede reported nearly fifty percent of Borr's current band

students were planning to drop band in the next school year.

[¶ 10] In his testimony to the school board, Borr acknowledged the band incident and how Diede had discussed it with him in November. Borr said he thought the problem had been resolved at that time, and he had not expected it would appear in his personnel file. Borr displayed a copy of his November letter of apology to the band students.

[¶ 11] The nonrenewal hearing was completed on April 25, and then a majority of the school board voted not to renew Borr's teaching contract. Borr sued the District, alleging

the McKenzie County Public School District (District) wrongfully nonrenewed his teaching contract because the school board abused its discretion (1) in finding the District's administration had substantiated the nonrenewal reason of declining enrollment as required under the nonrenewal statute, and (2) in permitting the District's principal to present evidence supporting the administration's nonrenewal recommendation under its reduction-in-force policy in violation of the secret personnel file statute.

*Borr v. McKenzie County Pub. Sch. Dist. No. 1 (Borr I),* 541 N.W.2d 681, 681 (N.D. 1995). Both sides moved for summary judgment. The trial court granted the District's motion and summarily dismissed Borr's claim for wrongful nonrenewal.

[¶ 12] On appeal, we reversed. *Id.* We unanimously ruled that, "[b]ecause the trial court did not rule on all the issues necessary to determine Borr's claim, the school District was not entitled to summary judgment as a matter of law." *Id.* at 682. We explained:

The trial court determined the District's administration had substantiated its nonrenewal reason of declining enrollment, but the court also needed to determine whether the District met it[s] contractual obligation under its RIF policy. In determining if the District met this obligation, the court needs to consider Borr's second issue claiming an abuse of discretion by the school board in permitting evidence at Borr's nonrenewal hearing that may have violated the secret personnel file statute.

*Id.* at 684. On remand, both sides moved for judgment on the existing record without offering further evidence. The trial court stated additional conclusions and again dismissed Borr's claim.

[¶ 13] The trial court concluded Diede's notations in his desk planner about parental complaints did not violate the statutes prohibiting a "secret personnel file" because he promptly informed Borr about those complaints. For the same reason, the trial court ruled that the school board did not abuse its discretion by permitting Diede's testimony at the nonrenewal hearing, whether or not Diede's notations about parental complaints violated the "secret personnel file" statute. The trial court also concluded the school board had met its obligations to Borr under its RIF policy in deciding not to renew his teaching contract.

[¶ 14] In this second appeal, Borr urges the trial court erred in ruling there was no violation of the "secret personnel file" statutes. Although Borr does not identify a specific violation, he argues Diede's note-keeping should be gauged in the context of related statutes regulating procedures for a teacher's personnel file and for nonrenewal of a teacher's continuing contract, since both statutes are designed to protect a teacher's rights. Borr contends he was denied a fair hearing because the school administration did not specifically notify him beforehand that information about the band incident would be put in his personnel file and used against him at a nonrenewal hearing. To use the band incident for nonrenewal, Borr contends Diede should have put the information in his personnel file immediately to give him adequate notice of its potential use.

[¶ 15] Borr also argues the trial court erred when it concluded the school board did not abuse its discretion whether or not the "secret personnel file" statutes were violated. If Diede violated those statutes, Borr contends, then the trial court should have concluded the school board abused its discretion by considering the information at all. If the board abused its discretion in hearing evidence, then, Borr contends as a matter of law, the board did not fulfill its legal and

contractual obligations to Borr in deciding not to renew his continuing contract.

[¶ 16] The District contends Diede did not violate the statutes prohibiting a "secret personnel file" because he promptly informed Borr about the parental complaints as they came to him.[1] The District submits the school board did not abuse its discretion because Diede's oral evidence of the band incident and the complaints was proper in any event, Borr himself explained the incident at the hearing, and other evidence of ineffectiveness supported the administration's selection of Borr. The District thus contends it fulfilled its legal and contractual obligations to Borr. We agree.

[¶ 17] Judicial review of a nonrenewal decision by a school board, as we explained in *Borr I* is limited to

(1) determining whether or not the reasons given are in accordance with the statutory provisions, i.e., they are not frivolous or arbitrary but, rather, are related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in teaching staff; and (2) determining—if those reasons are legally sufficient—whether or not under the facts of the case the school board had abused its discretion in reaching the nonrenewal decision.

541 N.W.2d at 682 (quoting *Dobervich v. Central Cass Pub. Sch. Dist.*, 302 N.W.2d 745, 751–52 (N.D.1981)). In *Borr I* too, we recognized that the trial court had determined "the District's administration had substantiated its nonrenewal reason of declining enrollment," but we remanded for the trial court "to determine whether the District met it[s] contractual obligation under its RIF policy." *Id.* at 684. Specifically, we directed the trial court to consider whether the District abused its discretion "in permitting evidence at Borr's nonrenewal hearing that may have violated the secret personnel file statute." *Id.*

[¶ 18] If a school administrator really keeps a secret personnel file on a teacher that is later used at a nonrenewal hearing, no doubt that use would deny specific rights granted a teacher by NDCC ch. 15–38.2. We explained in *Borr I* a teacher's rights to an open and accessible personnel file:

Teachers have the right to review the contents of their personnel files and to make notes in their files about the contents. N.D.C.C. §§ 15–38.2–01, –02. They also have the right to object to material placed in their file and to be informed promptly of complaints against them. *Id.* §§ 15–38.2–03, –04.

541 N.W.2d at 684. The private diary of a principal recording a teacher's performance in ways never discussed with the teacher would certainly violate the statutes prohibiting a secret personnel file, if that record was later used at a nonrenewal hearing. Still, the trial court analyzed this hearing in keeping with the "secret personnel file" statutes:

The statute prohibiting secret files does not say that everything that is brought to the teacher's attention should be placed in the teacher's file, but rather the statute states that anything that is placed in the teacher's file should be brought to the teacher's attention, i.e. so that the allegation is not secret. (N.D.C.C. § 15–38.2–04)

... The principal upon receiving the complaints wrote them in his Franklin planner and timely brought this information to the attention of [Borr]. This is not a case where the information was secretly put in a file and the teacher given no chance to explain or contradict the evidence. Indeed, in this specific case [Borr] not only responded, [he] indicated that the proper quote was that the band had "stunk" and that he had written a letter to the band on November 21, 1993, offering a very sincere apology.

Inasmuch as oral testimony is acceptable at the RIF hearing which took place on

---

**1.** The District also contends Borr gave a copy of his apology letter to Diede to put into his personnel file, but we were unable to locate any evidence that the letter was actually put in the file, and the District makes no record reference to

support its contention. Under NDCC 15–38.2–02, Borr certainly could have had material placed in his own personnel file. There is no evidence he was refused an opportunity to do so.

April 20th, the principal was well within his rights to bring up this matter, especially since it had been discussed and resolved earlier in the year.

The trial court reasoned Borr "was allowed to give his side of the story [and] present his evidence, including the letter of apology to the students," at the nonrenewal hearing.

[¶ 19] Since the school board "heard all of the evidence on both sides of this particular issue," the trial court thought the school board had "ample opportunity to give the incident the weight it deserved" and therefore did not abuse its discretion in hearing about Borr's troubled relationship with his junior high band. The trial court concluded that, in weighing the band incident as reflecting on Borr's teaching performance, the school board did not violate its contractual obligation to Borr under the RIF policy.

[¶ 20] A RIF policy "imposes an additional contractual obligation upon [a] school district in reaching its decision to not renew a particular teacher." *Borr I*, 541 N.W.2d at 683 (quoting *Law v. Mandan Pub. Sch. Dist.*, 411 N.W.2d 375, 378 (N.D.1987)). The District agreed in *Borr I* its RIF policy was part of its contract with its teachers. *Id.* at 683. The District's RIF policy directs:

> In the event the Board, in its sole discretion, determines it is necessary to reduce the number of teachers for reasons including, but not limited to, lack of funds, uncertainty of funds, declining enrollment or other similar reasons of necessity, whether District wide or in a given subject area, field or program, the Board shall follow the guidelines listed below in determining the selection of the teacher(s) to be nonrenewed because of the reduction in force:
>
> 1. The Board shall rely upon the recommendations of the principals and/or superintendent as to the adaptability of individual teachers to meet the present or future staffing and educational needs within the District. These recommendations shall take into consideration, among other things, teaching effectiveness, flexibility of assignments and willingness to accept co-curricular tasks.

We agree with the trial court the school board relied on a recommendation by principal Diede that was partially drawn from Borr's troubled relationship with his band students.

[¶ 21] Yet Diede promptly and repeatedly discussed the parental complaints with Borr when they came in, sought corrective action from Borr, and only thereafter summarized the band incident into Borr's personnel file. Although Diede's placement of this information into Borr's personnel file coincided with the administration's selection of Borr for part of a reduction in force, the addition to Borr's personnel file also corresponded to a new flurry of complaints. The new complaints, again noted in Diede's desk planner, were not kept secret from Borr. Thus, all parental complaints were brought to Borr's attention soon after their receipt by the principal. This complied with NDCC 15–38.2–04: "Any complaint made against a teacher ... by any parent, student, or other person, must promptly be called to the attention of the teacher if said complaint is to be placed in the teacher's personnel file."

[¶ 22] While there is a connection between the statutes on renewing a continuing contract with a teacher and the statutes prohibiting a secret personnel file for a teacher, as the arguments in *Hovet v. Hebron Pub. Sch. Dist.*, 419 N.W.2d 189, 191–92 (N.D.1988) illustrate, there is no evidence Borr was ever denied the right to review his personnel file. *See* NDCC 15–38.2–01. Nor is there any indication he was denied the right to submit additional written material for his personnel file. *See* NDCC 15–38.2–02. The school board reviewed Borr's objections to information about the band incident and parental complaints being placed in his personnel file at the nonrenewal hearing. *See* NDCC 15–38.2–03 (entitling a teacher to formal review by the school board of material placed in his personnel file). We agree with the trial court's conclusion that Borr's right as a teacher to an open and accurate personnel file was not abridged by the principal's notations in his desk journal, even though they were not immediately transferred verbatim to the teacher's personnel file.

[¶ 23] Borr's band conduct, as described by his principal, was reasonably re-

lated to the criteria in the District's RIF policy for selecting teachers for nonrenewal. Neither the District's RIF procedures, nor the NDCC 15–47–38(5) nonrenewal procedures, limits the school administration to the exact materials for evaluating the teacher's performance placed in the teacher's personnel file.

[¶ 24] The law does not require a school board to specifically articulate its reasons for selecting one teacher over another for nonrenewal. *Kent v. Sawyer Pub. Sch. Dist. No. 16,* 484 N.W.2d 287, 289 (N.D.1992); *Reed v. Edgeley Pub. Sch. Dist. No. 3,* 313 N.W.2d 775, 778 (N.D.1981). The District's good faith compliances with statutory and correlated contractual obligations to the teacher is all that is required.

> Each district shall have an established system through which written evaluations are prepared for every teacher employed by the district as provided in section 15–47–27. The reasons given by the board for not renewing a teacher's contract must be sufficient to justify the contemplated action of the board and may not be frivolous or arbitrary but must be related to the ability, competence, or qualifications of the teacher or the necessities of the district such as lack of funds calling for a reduction in the staff. At the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The administrator shall substantiate the reasons with written or oral evidence presented at the meeting.... All witnesses are subject to questioning for the purposes of clarification.... The determination not to renew a contract if made in good faith is final and binding on all parties.

NDCC 15–47–38(5). In *Law v. Mandan Pub. Sch. Dist.,* 411 N.W.2d at 380, we elaborated on how the statutory procedures fit with a contractual RIF policy:

> As this court noted in *Reed,* [*v. Edgeley Pub. School,* 313 N.W.2d 775 (1981)], the statute does not explicitly or implicitly require a school board to articulate its reasons for selecting one teacher over another

for nonrenewal. Thus the statutory requirement that the administrator substantiate the reasons for nonrenewal does not extend to the teacher chosen for nonrenewal. Under the RIF policy the superintendent and the principal are to make recommendations based on the policy but it is the board which must take the action and we do not extend the statutory requirements for substantiation by the administrator to the RIF policy.

[¶ 25] Likewise in this case, we do not extend the statutory requirements for substantiation by the administration to the RIF policy. Absent a different provision in the RIF policy, the weight to be given to its criteria is for the school board to decide.

[¶ 26] We agree with the trial court there is no evidence the statutes forbidding a secret personnel file were violated, there is no evidence the school board's reasons for not renewing Borr's teaching contract were arbitrary or frivolous, and there is no evidence the decision not to renew Borr's teaching contract was other than in good faith.

[¶ 27] Therefore, we affirm dismissal of Borr's claim for wrongful nonrenewal of his teaching contract.

[¶ 28] VANDE WALLE, C.J., and MARING, J., concur.

NEUMANN, Justice, dissenting.

[¶ 29] I agree with the majority: if a school administrator keeps a secret personnel file and it is later used at a nonrenewal hearing, such use would deny specific rights granted by N.D.C.C. ch. 15–38.2. I must, however, respectfully dissent from the majority's holding that the notice requirements of 15–38.2 are satisfied by doing nothing more than promptly informing a teacher about any complaints.

[¶ 30] Section 15–38.2–04, N.D.C.C., provides "[a]ny complaint made against a teacher ... must promptly be called to the attention of the teacher *if said complaint is to be placed in the teacher's personnel file.*" (Emphasis added.) The majority apparently gives this statute a strict, literal reading, and holds it does not require a school administrator to tell the teacher whether the complaint

is going to be placed in the teacher's personnel file, but only that the complaint has been made. While the statute, standing alone, perhaps can be read that way, such an interpretation fails to consider a teacher's rights under N.D.C.C. §§ 15–38.2–03 and 15–38.2–02 to object to material placed in the teacher's file, and to submit written notations for attachment to material in the file. If a teacher need only be told complaints have been made, without being told whether those complaints are going to be placed in the teacher's personnel file, the right to object to things placed in the file becomes meaningless.

[¶ 31] In this case, the teacher was promptly informed of complaints against him in November of 1993, but those complaints were not placed in the teacher's personnel file at that time, and the teacher was not informed the complaints would be kept in his personnel file. The principal, rather than placing the complaints in the teacher's file and advising the teacher of such action, instead made notes of the complaints in his daily planner, and failed to inform the teacher such notes were being kept. It was not until April 11, 1994, the same day the teacher's nonrenewal was recommended to the school board, that a summary of the complaints against the teacher was transferred to the teacher's personnel file, again without notice to the teacher.

[¶ 32] The school district has argued an administrator's daily planner cannot possibly be a teacher's personnel file, secret or otherwise, and therefore the requirements of N.D.C.C. ch. 15–38.2 cannot have been violated in this case. It seems to me, however, that for purposes of N.D.C.C. ch. 15–38.2 a file must include any place or thing, including a daily planner, in which a school administrator keeps or retains information regarding a teacher. Any narrower interpretation would permit administrators to avoid the legislative mandate of N.D.C.C. ch. 15–38.2 entirely, merely by gathering information about teachers in any place they might choose—a shoebox, a daily planner, or a stack of papers on the corner of a desk—and simply saying the particular gathering place is not labeled a "personnel file."

[¶ 33] Principal Diede's daily planner was being used as a place to retain information and complaints regarding a teacher, therefore, it must be considered a personnel file for the purposes of N.D.C.C. ch. 15–38.2. Because the teacher was not told the complaints were being placed in this personnel file, the use of those complaints at the teacher's nonrenewal hearing denied the teacher specific rights granted by N.D.C.C. ch. 15–38.2, and constituted an arbitrary action by the school board, an action requiring reversal of the district court's judgment in this case.

[¶ 34] SANDSTROM, J., concurs.