1999 ND 3

**Serenus HOFFNER, Plaintiff
and Appellant,**

v.

**BISMARCK PUBLIC SCHOOL DIS-
TRICT, a Public Corporation,
Defendant and Appellee.**

**Civil No. 980093.**

Supreme Court of North Dakota.

Jan. 27, 1999.

Rehearing Denied Feb. 23, 1999.

Daniel J. Chapman, of Chapman & Chapman, Bismarck, ND, for plaintiff and appellant.

Gary R. Thune, of Pearce & Durick, Bismarck, ND, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Serenus Hoffner appealed from a summary judgment dismissing his wrongful termination action against the Bismarck Public School District ("the District"). We affirm.

I

[¶ 2] Hoffner was employed by the District as the principal of South Central High School. In March 1997 the District notified Hoffner it was contemplating nonrenewal of his contract for "inability to effectively perform the duties and responsibilities of your position, including unsatisfactory working relationships with the staff over which you have supervision and with the staff members with whom you work." Following a hearing, the School Board voted to nonrenew Hoffner's contract.

[¶ 3] Hoffner brought this action in district court, alleging wrongful termination. The district court granted summary judgment

dismissing Hoffner's action, and Hoffner appealed.

## II

[¶ 4] This appeal centers upon the interpretation of N.D.C.C. § 15–47–38(5), which provides:

The school board of any school district contemplating not renewing a teacher's contract, as provided in section 15–47–27, shall notify the teacher in writing of such contemplated nonrenewal no later than April fifteenth. The teacher must be informed in writing of the time, which may not be later than April twenty-first, and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. The teacher must also be informed in writing of the reasons for nonrenewal. *The reasons given by the school board for its decision not to renew a teacher's contract must be drawn from specific and documented findings arising from formal reviews conducted by the board with respect to the teacher's overall performance.* Each district shall have an established system through which written evaluations are prepared for every teacher employed by the district as provided in section 15–47–27. The reasons given by the board for not renewing a teacher's contract must be sufficient to justify the contemplated action of the board and may not be frivolous or arbitrary but must be related to the ability, competence, or qualifications of the teacher or the necessities of the district such as lack of funds calling for a reduction in the staff. At the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The administrator shall substantiate the reasons with written or oral evidence presented at the meeting, unless the administrator is the subject of the contemplated nonrenewal, in which case the board shall substantiate the reasons with written or oral evidence presented at the meeting. . . . If the reasons for nonrenewal have not been substantiated, the nonrenewal proceedings will be dismissed. [Emphasis added].

[¶ 5] The parties agree Hoffner falls within the statutory definition of "teacher," and nonrenewal of his contract is therefore governed by N.D.C.C. § 15–47–38(5). *See* N.D.C.C. § 15–47–26; *Cunningham v. Yellowstone Public School District,* 357 N.W.2d 483, 485 (N.D.1984). The parties differ, however, in their interpretation of the emphasized language of the statute.

[¶ 6] The District asserts the "formal reviews conducted by the board" refers to the nonrenewal hearing, and the board's "reasons . . . for its decision not to renew" refers to the final decision after the hearing. Thus, the District asserts, the statute is satisfied if the reasons given by the board in its final decision to nonrenew are drawn from findings arising from the formal hearing before the board. Hoffner asserts the "formal reviews" are the statutorily required teacher evaluations, *see* N.D.C.C. § 15–47–27, and N.D.C.C. § 15–47–38(5) requires that the reasons given by the board in the written notice informing the teacher of contemplated nonrenewal must be drawn from findings arising from those annual evaluations.

[¶ 7] The legislature did not define the term "formal reviews," and the intent of the statute is not clear on its face. The parties have set forth competing reasonable interpretations of the statute. Therefore, because the statute is susceptible to differing, but rational, meanings, it is ambiguous. *See Medcenter One, Inc. v. North Dakota State Board of Pharmacy,* 1997 ND 54, ¶ 13, 561 N.W.2d 634. Our primary purpose in construing a statute is to ascertain legislative intent. *Id.* When a statute is ambiguous, we may look to the legislative history to discern that intent. *Hamich v. State,* 1997 ND 110, ¶ 13, 564 N.W.2d 640.

[¶ 8] Our review of the legislative history of N.D.C.C. § 15–47–38(5) indicates a clear intent to tie together the teacher evaluation and nonrenewal processes, and demonstrates the legislature's understanding that the "formal reviews" in the statute refer to the teacher evaluations, not to the nonrenewal hearing as argued by the District. The language in question was added to the statute in

1983. As amended, the statute provided, in part:

> The school board of any school district contemplating not renewing a teacher's contract, as provided in section 15–47–27, shall notify the teacher in writing of such contemplated nonrenewal no later than April ~~first~~ *fifteenth.* The teacher shall be informed in writing of the time, which shall not be later than April ~~seventh~~ *twenty-first,* and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. The teacher shall also be informed in writing of the reasons for nonrenewal. *The reasons given by the school board for its decision not to renew a teacher's contract must be drawn from specific and documented findings arising from formal reviews conducted by the board with respect to the teacher's overall performance. Each district shall have an established system through which two written evaluations are prepared for every teacher employed by the district during each school year. These written performance reviews shall be completed and made available to the teacher no later than December fifteenth for the first review and February twenty-eighth for the second review each year.* The reasons *given by the board for not renewing a teacher's contract* shall be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary but shall be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff.

1983 N.D. Sess. Laws ch. 230, § 4. As the amendment indicates, the provision requiring that reasons be based upon "formal reviews" and the provision requiring, at that time, two written evaluations of a teacher each year were part of the same amendment, and were placed together in N.D.C.C. § 15–47–38(5). The language and placement of the amendment indicate the legislature's intent that the "formal reviews" meant the two annual written evaluations. Furthermore, the use of the plural "reviews" clearly suggests the legislature meant the multiple yearly evaluations, and not the single nonrenewal hearing.

[¶ 9] Further support for this interpretation of the statute is found in the minutes of hearings on the 1983 amendment. Legislators in committee raised a question about the definition of "formal reviews." *See Hearing on S.B. 2394 Before the House Education Comm.,* 48th N.D. Legis. Sess. (Mar. 15, 1983) ["*Hearing on S.B. 2394*"]. If the "formal reviews" meant the nonrenewal hearing itself, it is hard to imagine why the committee members would question what a "formal review" entailed. The nonrenewal hearing had been part of the nonrenewal statute since originally enacted, *see* 1967 N.D. Sess. Laws ch. 147, § 2, and legislators would surely have understood what a hearing entailed. In discussion, it was indicated the "formal reviews" might include "a formal interview of teacher, administration and school board member." *Hearing on S.B. 2394.* Again, this explanation suggests they meant the evaluations rather than the nonrenewal hearing, which was required to consist of a special meeting of the entire school board, usually in executive session. *See* N.D.C.C. § 15–47–38(5).

[¶ 10] The most significant comments are those of one of the bill's sponsors. Committee minutes indicate Representative Swiontek, in discussing whether to require two or three annual evaluations of teachers, said, "if three reviews have problems with dates, maybe 2 formal reviews are enough." *Hearing on S.B. 2394.* Thus, the bill's sponsor clearly equated the "formal reviews" mentioned in the statute with the written teacher evaluations, not the nonrenewal hearing before the board. We conclude the legislature intended the "formal reviews" to mean the written teacher evaluations, and the statute requires the reasons for contemplated nonrenewal listed in the notice to the teacher must be drawn from findings arising from the teacher evaluations.

[¶ 11] We recognize the legislature amended N.D.C.C. § 15–47–38(5) in 1989, removing the language requiring two evaluations annually and instead referencing N.D.C.C. § 15–47–27, which now spells out the requirements of teacher evaluations. *See* 1989 N.D. Sess. Laws ch. 238. Nothing in the legislative

history of that amendment suggests an intent to change the previously expressed intent that "formal reviews" in N.D.C.C. § 15–47–38(5) mean the required written evaluations.

[¶ 12] The District argues "formal reviews" must mean the formal nonrenewal hearing before the board, because the statute says "formal reviews *by the board.*" The parties agree school boards do not conduct the evaluations of individual teachers, and the District argues this language therefore indicates the "formal reviews" must be the nonrenewal hearing conducted by the board. The statute is not, however, clear on its face. The reference to plural "reviews" is inconsistent with the fact there can be only one nonrenewal hearing. Furthermore, the location of 'the "formal reviews" language in N.D.C.C. § 15–47–38(5) suggests it is tied to the written evaluations. We have resolved the ambiguity in the statute by reference to legislative history, and have discerned the legislature's intent was that "formal reviews" mean the written evaluations. We believe the language "by the board" can be construed as meaning "at the direction of the board." A further explanation for this language may be the legislative committee's apparent uncertainty about the exact process of teacher evaluations, and their belief school board members may have been involved in that process. *See Hearing on S.B. 2394* (formal review may include "a formal interview of teacher, administration and school board member").

[¶ 13] We conclude the "formal reviews" referenced in N.D.C.C. § 15–47–38(5) are the written teacher evaluations. The challenged statutory language requires the reasons given by the board in its notice of contemplated nonrenewal must be drawn from findings arising from the written evaluations.

[¶ 14] The District asserts a different result is required by our decision in *Borr v. McKenzie County Public School District,* 1997 ND 30, 560 N.W.2d 213. The District contends under *Borr* it is not limited to matters raised in the evaluations when it determines whether to nonrenew a contract. The District reads *Borr* too broadly.

[¶ 15] *Borr* did not involve a nonrenewal for cause, but was a nonrenewal pursuant to a reduction in force. The question presented was whether, in applying the criteria under the district's reduction-in-force policy, the board had improperly considered material from a "secret personnel file" in violation of statute. In concluding the board had not violated the statute, a majority of this Court indicated the nonrenewal procedures do not "limit[ ] the school administration to the exact materials for evaluating the teacher's performance placed in the teacher's personnel file." *Id.* at ¶ 23. *Borr* holds only that the board is not strictly limited to materials contained in the personnel file when nonrenewing a teacher pursuant to a reduction in force. It does not eviscerate the requirement that, when nonrenewing for cause, the board's notice must articulate reasons for the contemplated nonrenewal which are drawn from findings arising from the written evaluations.

### III

[¶ 16] The District asserts, even if we interpret N.D.C.C. § 15–47–38(5) to require the reasons listed in the nonrenewal notice be derived from findings arising from the written evaluations, that requirement was met in this case. We agree.

[¶ 17] The record demonstrates as early as the 1980s there were concerns about Hoffner's working relationships with those he supervised and his peers. Assistant Superintendent Sharon Johnson testified at the nonrenewal hearing Hoffner's evaluations from that time expressed concerns about communication problems, inflexibility, intimidation, and vindictiveness. In 1994 the North Dakota Education Association filed a complaint with the District on behalf of Hoffner's secretary, alleging Hoffner used fear, intimidation, and vindictive behavior in his dealings with his staff. The matter was ultimately resolved.

[¶ 18] As part of Hoffner's next written evaluation in February 1995, a "Plan for Personal Growth" was adopted listing several areas requiring improvement. Areas listed included communication, trust, inflexibility, and "need for control." In his 1996 annual

evaluation, it was noted the "communications goal is ongoing," and "[c]ommunication with the other building principals will continue to need attention." Later in 1996 problems again arose, and Assistant Superintendent Johnson met with Hoffner to address concerns about his relationships with other principals and administrators in the District. A written summary of the meeting in Hoffner's personnel file indicates Hoffner agreed he needed "to address the concerns about trust, teamwork, use of appropriate channels, and to gain a larger perspective of the overall good of students across the district." Johnson testified this was "a second improvement plan." A later memo in the file indicates Johnson and Hoffner met again on September 3, 1996, to address numerous problems, including:

Excessive ownership and protection of turf at South Central

Pushing too hard and use of "go-around" tactics

Strained relationships (lack of trust)

Physical and emotional distancing at meetings

Need to see the big picture of the whole system

Several specific suggestions for improvement were listed, and Johnson concluded the memo: "I think we are making a little progress."

[¶ 19] Hoffner's final evaluation, which was signed on March 4, 1997, was generally favorable, and did not specify problems in his working relationships.[1] Within days after that evaluation, however, four teachers sent a lengthy letter to the District outlining in detail the intimidating work environment and communication problems between Hoffner and staff. Johnson held a 2½ hour meeting with Hoffner and the complaining teachers on March 18, 1997. At that meeting, Hoffner labeled their complaints as "gross lies." On March 26, 1997, Hoffner was given written notice of the contemplated nonrenewal, speci-

fying the reason for nonrenewal as "inability to effectively perform the duties and responsibilities of your position, including unsatisfactory working relationships with the staff over which you have supervision and with the staff members with whom you work."

[¶ 20] The record unequivocally demonstrates the reasons given for Hoffner's contemplated nonrenewal were based upon matters raised in prior written evaluations. While Hoffner points to his generally favorable 1997 evaluation, he ignores the two prior evaluations which documented problems with communications and staff relationships. In determining whether to nonrenew a teacher's contract, the board is not limited to the most recent evaluation. *See Dobervich v. Central Cass Public School District,* 302 N.W.2d 745, 754 (N.D.1981); *see also Lithun v. Grand Forks Public School District,* 307 N.W.2d 545, 553 (N.D.1981). The statute itself says the reasons must be drawn from formal *reviews.* We conclude the notice given in this case complied with the statute.

[¶ 21] Hoffner asserts this case is like *Simmons v. New Public School District,* 1998 ND 6, 574 N.W.2d 561, and he was "ambushed" by the procedure employed in this case. *Simmons* involved application of the superintendent nonrenewal statute, N.D.C.C. § 15–47–38.2(13), which is similar to § 15–47–38(5). In *Simmons,* the superintendent was given a conclusory nonrenewal notice which merely "parroted the language of the statute," and the board then relied upon evidence at the hearing regarding matters of which Simmons had not been previously apprised. *Simmons,* at ¶¶ 6–7. Noting the District could not identify "a single witness who testified about a problem that had been called to Simmons's attention before the nonrenewal proceedings," we concluded the "nonrenewal procedure in this case became an ambush." *Id.* at ¶ 8. We held where Simmons did not have knowledge of the specific complaints and factual allegations against her, the conclusory notice did not

---

1. Johnson testified the District had adopted a new evaluation policy which required each principal to submit a "portfolio" which showed "evidence of competency." The evaluation was then written based in part upon the materials submitted by the principal. Hoffner submitted results of surveys completed by members of his staff as part of his portfolio, which indicated improvement in Hoffner's treatment of staff. Johnson testified she subsequently learned Hoffner had used selective data and had left out information which was unfavorable to him. Johnson testified she would not have written a favorable evaluation if she had had the complete information.

comply with N.D.C.C. § 15–47–38.2(13). *Simmons,* at ¶ 9.

[¶ 22] Hoffner certainly cannot complain he was unaware of the staff relationship problems which formed the basis of the board's decision to nonrenew his contract. The record is replete with evidence demonstrating the problem had been ongoing for many years, and there were personal meetings with Assistant Superintendent Johnson and written personal improvement plans intended to give Hoffner the opportunity to correct the situation. Unlike Simmons, Hoffner was well aware of the ongoing staff relationship problems and can hardly assert now he was "ambushed" by the proceedings in this case. Furthermore, Hoffner's counsel conceded at oral argument that Hoffner did not claim he was misled by the 1997 evaluation.

[¶ 23] We conclude the nonrenewal notice given by the District complied with N.D.C.C. § 15–47–38(5). Accordingly, the judgment dismissing Hoffner's action is affirmed.

[¶ 24] MARING and SANDSTROM, JJ., concur.

[¶ 25] The Honorable Herbert L. Meschke, a member of the Court when this case was heard, retired effective October 1, 1998, and did not participate in this decision.

[¶ 26] The Honorable Carol Ronning Kapsner was not a member of the Court when this case was heard and did not participate in this decision.

VANDE WALLE, Chief Justice, dissenting.

[¶ 27] I agree with the majority that the Legislature intended to "tie together the teacher evaluation and nonrenewal processes" and that the "formal review" referred to in the statute does not refer to the formal nonrenewal hearing. But, I also believe the purpose of N.D.C.C. § 15–47–38(5), requiring that the "reasons given by the school board for its decision not to renew a teacher's contract must be drawn from specific and documented findings arising from formal reviews conducted by the board with respect to the teacher's overall performance," is to avoid the exercise the majority must engage in to reach its result.

[¶ 28] I cannot read the statute to mean that the District can rely on past evaluations which indicate problems when, as the majority observes, the most recent evaluation "was generally favorable." The letters and other activity occurring between that evaluation on March 4, 1998, and the notice of contemplated nonrenewal on March 26, 1998 are not a part of that evaluation. At the most, the letters indicate there were persons who disagreed with the evaluation.

[¶ 29] In order to comport with the statute, I believe the reasons for nonrenewal contained in the evaluation must be ongoing through the most recent evaluation. The typical scenario might be one in which the reasons leading to nonrenewal begin rather low key in earlier evaluations and build to a crescendo in the last evaluation before the notice of contemplated nonrenewal. To rely on prior evaluations when the recent evaluation is favorable may well mislead the teacher.

[¶ 30] If the recent evaluation is imprecise or incorrect, that is a matter the District must deal with internally. If the evaluation was incorrect, incomplete or invalid for whatever reason, it is the District's responsibility to amend that evaluation before issuing the notice of contemplated nonrenewal. To hold otherwise may lull the teacher into a false sense of security as a result of the most recent evaluation or to permit reasons for contemplated nonrenewal to be drawn from sources not contained in the evaluation and perhaps not agreed to by the evaluators. Either possibility is unacceptable and dilutes the protections to the teacher the statute is obviously meant to provide. The statute is meant to protect the teacher and teachers have a clear legal right to compliance with the statutory procedures for nonrenewal. *Simmons v. New Public School Dist. No. Eight,* 1998 ND 6, ¶ 4, 574 N.W.2d 561. *Dobervich v. Central Cass Public School Dist.,* 302 N.W.2d 745, 754 (N.D.1981) does not support a proposition that a school board may rely on prior negative evaluations when the recent evaluation is favorable. Significantly, *Dobervich* was written before the 1983 Amendment to the statute, which required the reasons to be drawn from formal reviews. Furthermore, in *Dobervich* we observed:

Dobervich objects to the fact that evaluations of prior years were relied upon by the board in making its decision, although no notice was given to him that such evaluations would be relied upon nor were they discussed at the nonrenewal hearing. At trial, the board members testified they relied, in part, upon those evaluations. An examination of the transcript of the nonrenewal hearing discloses that the evaluations were mentioned by some board members as well as by Dobervich himself. Dobervich stressed the positive aspects of those evaluations. There were some negative statements in the evaluations also. Dobervich was not denied his statutory rights by the board's consideration of these evaluations.

*Id.* at 754.

[¶ 31] The application of section 15–47–38(5), N.D.C.C., by the District and approved by the majority permits a school district to comb past evaluations for reasons for contemplated nonrenewal even though later evaluations are favorable. Because I believe this distorts the intent of the statute and establishes an unacceptable precedent for future nonrenewal actions, I respectfully dissent.

[¶ 32] Gerald W. Vande Walle, C.J.